CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 6 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| BRONSON HOWARD TUCKER, | ) | CASE NO. 7:16CV00490 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| DANA RATLIFFE-WALKER, | ) | By: Hon. Glen E. Conrad |
| WARDEN, | ) | United States District Judge |
| Respondent. | ) | |

Bronson Howard Tucker, a Virginia inmate proceeding by counsel, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a final order by the Lynchburg City Circuit Court convicting him of distribution of cocaine within 1,000 feet of a school and distribution of cocaine, third or subsequent offense. Respondent filed a motion to dismiss, and Tucker responded, making the matter ripe for disposition. After review of the record, the court concludes that the petition must be dismissed.

### I.    Factual Background

In June 2010, Lynchburg City police officers arrested Jennifer Beverly on a drug charge, and she agreed to make controlled drug purchases for the police.[1] Beverly started using cocaine in October 2007; at the time of the trial, she had used cocaine for three and a half years.

Beverly met Tucker in August 2010 through Lisa Guill, a friend and neighbor. Beverly spent time with Tucker and Lisa Guill when drugs were present. Beverly spoke to Detective Joel Hinkley about making a controlled buy from Tucker and Lisa Guill, and, on September 30, 2010, arranged to purchase cocaine from Tucker at an Applebee's restaurant. Beverly met with officers who searched her and her vehicle before outfitting her with police recording equipment.

---

[1] Beverly's charge was nolle prosequied on January 5, 2011, but "if [she] lied to the police it would be brought back . . . ." Trial Tr. 51.

Officers gave Beverly $100 to make the controlled purchase, and she drove to Applebee's to meet Tucker and Guill.

Upon Beverly's arrival, Tucker and Guill entered Beverly's vehicle and discussed the purchase. Tucker's face was not visible on the video recording, but Beverly identified Tucker as the male voice heard on the tape. Beverly requested "fifty or a whole G"[2] and handed Tucker $80. Tucker took the money, grabbed two bags of cocaine from his vehicle, and returned to Beverly's car. Beverly placed the two bags of cocaine on her lap, and drove back to Hinkley. Beverly gave Hinkley the cocaine and the remaining $20. Officers searched Beverly and her vehicle but once again did not find any other drugs or money.

The audio and video recordings of the encounter were admitted into evidence. The Applebee's was within 400 feet of Liberty Christian Academy. At trial, Beverly testified that Tucker bagged his cocaine in a distinctive way: the bag was "rolled down and tied so it's like little wings on each side of the bag." Trial Tr. 65.

During cross-examination, Beverly admitted that she made false statements when she told Tucker's former attorney that Tucker did not sell her cocaine. Beverly explained that she lied to Tucker's former attorney because she felt pressured by Guill and that Tucker had pleaded with Beverly to speak with his attorney.

At trial, Hinkley testified that Beverly made five controlled buys from more than one person, and that she had assisted police in finding people that had outstanding warrants. He further stated that he always found Beverly credible and reliable. He confirmed several aspects of Beverly's testimony: officers searched her and her vehicle for contraband and cash, placed a "live wire" in her pocketbook, and monitored her during the transaction through the live wire, in

---

[2] "A G is a whole gram and fifty [was] about half a gram." Trial Tr. 64.

person,[3] and via multiple phone calls. Also, Hinkley and Lieutenant Marty Soyars listened to the drug transaction and identified Tucker as the male voice on the audio. When police ran the license plate on Tucker's vehicle, the car came back as belonging to Ginger Tucker, the petitioner's mother.

Another detective, Dan Bailey, sat inside the Applebee's and observed Tucker leave the restaurant a minute before Beverly arrived to make the drug purchase. Tucker stayed outside for approximately two minutes before returning to the restaurant. The Commonwealth introduced Bailey's surveillance video into evidence.

The defense presented a number of witnesses who testified that Beverly did not have a reputation for truthfulness in the community. Further, Tucker's former appointed counsel, Leslie Allen, testified that he took a statement from Beverly about Tucker's case.[4] He also confirmed the accuracy of the interview transcript which counsel had introduced into evidence when impeaching Beverly, specifically her statement during the meeting that she had not purchased cocaine from Tucker.

---

[3] Beverly testified that she knew that officers were following and watching her, but she did not know their locations.

[4] Beverly described the circumstances of the Allen interview:
I was trying to appease Lisa [Guill] because Lisa can be very controlling and very pushy and I just felt like that I was trying to save my life, okay, because I live in Lynchburg and they do, too, and she's already attempted to take everything away from me, my children and my job . . . [Lisa] heard everything. She told me she heard everything.
Trial Tr. 75. Beverly testified that she "felt like [her] life was being threatened . . . [by] Lisa Guill, Mr. Tucker's girlfriend." Trial Tr. 76. Beverly stated that after about twenty minutes of questioning, she stopped the interview:
I wasn't going to lie for Bronson in respect to saying that I was only handing him money that the police gave me, that I would be arrested by the police department. I said I'll not do this because I'll get arrested is what I told Mr. Allen, yeah, after he asked me all about the questions.
Trial Tr. 71.

## II.    Procedural History

After a jury trial, the Lynchburg City Circuit Court convicted Tucker of distribution of cocaine within 1,000 feet of a school and distribution of cocaine, third or subsequent offense and sentenced him to twenty years in prison, with eight years suspended.  Tucker appealed, arguing that (1) the trial court erred in excluding evidence of drug use by Jennifer Beverly, and (2) the trial court erred in finding the evidence sufficient to convict him.  The Virginia Court of Appeals affirmed the convictions, denying his first assignment of error on the merits, and holding that the second assignment of error was procedurally barred under Va. Sup. Ct. R. 5A:18 because Tucker had failed to preserve the issue at trial with a renewed motion to strike or motion to set aside the verdict.  The Supreme Court of Virginia then denied Tucker's petition for appeal, holding that the first assignment of error was without merit, and the second assignment was procedurally defaulted because it did not address the Virginia Court of Appeals' ruling as required by Va. Sup. Ct. R. 5:17(c)(1)(iii).

Tucker filed a timely <u>habeas</u> petition in the circuit court, but the court denied his petition and a motion to reconsider.  The Virginia Supreme Court subsequently refused Tucker's <u>habeas</u> appeal and motion for rehearing.

## III.    Current Petition

On October 17, 2016, Tucker filed, by counsel, a timely federal <u>habeas</u> petition under 28 U.S.C. § 2254, raising five claims:

1. The evidence against Tucker was legally insufficient as a matter of federal constitutional law;

2. Counsel was ineffective for failing to use Beverly's videotaped statements when impeaching her;

3. Counsel was ineffective for failing to call Ginger Tucker as a defense witness;

4. Counsel was ineffective for failing to call Lisa Guill as a defense witness; and

5. Counsel was ineffective in connection with the plea bargain process.

This matter is now before the court on Respondent's motion to dismiss. Respondent has conceded that Tucker has properly exhausted his claims in state court.

## IV.    Standard of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, a federal court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 66, 101 (2011) (internal quotations omitted).

To establish ineffective assistance, a petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the alleged deficient performance. Strickland v. Washington, 466 U.S. 668, 669 (1984). Courts apply a strong presumption that counsel's performance, especially regarding trial management and

strategy, was within the range of reasonable professional assistance. Id. at 689. To demonstrate prejudice, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "Bare allegations" of constitutional error are not sufficient grounds for habeas relief; the petitioner must proffer evidence to support his claims. Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992).

## V.    Procedural Default

The United States Supreme Court has long held that a state prisoner's habeas claims may not be entertained by a federal court "when (1) 'a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" Maples v. Thomas, 565 U.S. 266, 280 (2012) (quoting Walker v. Martin, 562 U.S. 307, 316 (2011)). A procedural rule is adequate "if it is regularly or consistently applied by the state court," and independent "if it does not 'depend[] on a federal constitutional ruling.'" Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999) (quoting Ake v. Oklahoma, 470 U.S. 68, 75 (1985)).

"If a claim is defaulted, then petitioner must fail on that claim unless he can show that cause and prejudice or a fundamental miscarriage of justice might excuse his default." Bell v. True, 413 F. Supp. 2d 657, 676 (W.D. Va. 2006) (citing Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998)). The "cause" prong requires a petitioner to demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). The "prejudice" prong requires a petitioner to show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id. at 495.

Meanwhile, the fundamental miscarriage of justice exception requires a petitioner to prove his actual innocence with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

## VI.    Analysis

### A.  Claim 1

In Claim 1, Tucker argues that the evidence was legally insufficient to convict him of distribution of cocaine, because Beverly was a "uniquely unsuitable" witness. Without Beverly's testimony, Tucker alleges that the Commonwealth's remaining evidence was footage of Tucker leaving and reentering the Applebee's, which only proved that he was "in the general area at the time the crime was allegedly committed." Pet'r's Pet. 12. Tucker alleges that if he had, in fact, sold cocaine to Beverly, then the Commonwealth would have had a "tremendous amount of direct evidence with which to convict him." Also the two undercover officers could have arrested him immediately and the Commonwealth would have been able to introduce evidence of his possession of other drugs or a marked bill from Ms. Beverly." Pet'r's Pet. 14-15. Lastly, Tucker contends that the officers' recognition of his voice on the audiotape was mistaken because they were "highly predisposed to believe that the voice they heard on the audio recording was that of Mr. Tucker." Pet'r's Pet. 13.

On direct review, the state courts ruled that the issue was procedurally defaulted under Rule 5:17(c)(1)(iii) and 5A:18 of the Rules of the Supreme Court of Virginia. First, Rule 5:17(c) is an adequate and independent state procedural bar that arises when a petitioner fails to address the lower court's holding in a direct appeal to the Virginia Supreme Court. See Yeatts, 166 F.3d at 264 (holding Rule 5:17(c)(1)(iii) is an adequate and independent state bar). Second, Rule

5A:18 is an adequate and independent state procedural bar that arises when a petitioner fails to preserve an issue by making a contemporaneous objection at trial.[5] See, generally, Weeks v. Angelone, 176 F.3d 249, 270 (4th Cir. 1999); Fisher v. Dir., Va. Dep't of Corr., 2016 WL 5477756, at *2 (W.D. Va. Sept. 29, 2016) (holding Rule 5A:18 is an adequate and independent state bar).

Further, Tucker fails to excuse his default because he has not shown cause and prejudice or a miscarriage of justice. He has not demonstrated that an objective, external factor prevented his compliance with state procedural requirements and that the alleged constitutional violation substantially infected his trial, and he has not demonstrated that he is actually innocent.[6]

Regardless, Claim 1 is without merit. Federal habeas review of sufficiency of evidence claims are limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The federal court considers circumstantial and direct evidence, and "allows the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Moreover, "[w]here there are conflicts in testimony, it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses." Id. at 1021-22 (citing United States v. Fisher, 484 F.2d 868, 860-70 (4th Cir. 1973); see also Marshall v. Lonberger, 459 U.S. 422, 434

---

[5] Tucker "failed to make a motion to strike, and he failed to move to set aside the verdict"; therefore, he "did not preserve the question of the sufficiency of the evidence to support the convictions." Tucker v. Commonwealth, No. 1478-11-3, slip op. at 4 (Va. Ct. App. Jan. 11, 2012).

[6] Tucker does not assert new, reliable evidence that was not presented at trial. Tucker contends that "proffered testimony from Ginger Tucker and Lisa Guill . . . clearly establishes [his] innocence," but Tucker only offers an affidavit from Lisa. Pet'r's Resp. to the Mot. to Dismiss 12. Further, the state courts have documented Ginger and Lisa's credibility issues; therefore, Tucker does not assert a colorable claim of actual innocence under Schlup.

(1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

At trial, the Commonwealth offered significant direct and circumstantial evidence including: eyewitness testimony, audio and video of the drug purchase, surveillance evidence, voice identification, and Tucker's packaging technique. Although Tucker impeached Beverly and attempted to controvert some evidence, he has not shown that no rational trier of fact, based on the evidence presented, could have found him guilty beyond a reasonable doubt.

The state courts' rulings were not contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of facts. Tucker's first claim is defaulted without excuse and ultimately without merit; therefore, the court grants the motion to dismiss as to Claim 1.

## B.  Claim 2[7]

In Claim 2, Tucker alleges that counsel was ineffective for failing to use Beverly's videotaped statement when impeaching her. He argues that (1) "counsel would without question have been authorized to play the videotape for the jury," and (2) "the jury's response would likely have been different, and reasonable doubt would likely have been raised, if the jury had

---

[7] Regarding Claims 2 through 4, the circuit court stated the following:

> [T]he Court finds Beverly's testimony was corroborated by the police surveillance tape of the transaction, which demonstrated petitioner sold cocaine to Beverly. The videotape offers a complete explanation for the jury's decision to believe Beverly despite the impeachment accomplished by counsel. Placed in the proper context of the testimony at trial, the claims presented by petitioner and his current counsel amount to assertions that Mr. Morchower was ineffective for not introducing evidence that was inadmissible and that had been exposed to the Court as perjury suborned to assist the defense at a time before Mr. Morchower's involvement in the case. Although Mr. Morchower knew the prior statement had been made, Beverly's testimony revealed [Tucker's] intimate associates engaged in conduct designed to perpetrate a fraud upon this Court. Tucker and his witnesses placed Mr. Morchower in an untenable position, and Tucker cannot blame Mr. Morchower for the circumstances that led to his conviction.

Tucker v. Dillman, No. CL13008259-00, slip op. at 4-5 (Va. Cir. Ct. Sept. 15, 2015).

seen Beverly's videotaped pretrial statement in which she said she had falsely implicated []

Tucker, and described her reasons for doing so." Pet'r's Pet. 17.

On habeas review, the circuit court concluded:

> The Court finds that the video of the statement would not have been admissible. Mr. Morchower impeached Jennifer Beverly using her prior inconsistent statements made to Leslie Allen. Beverly admitted having made the statements. Because Beverly admitted the statements, extrinsic evidence was not admissible to prove the statements had been made. See Va. R. Evid. 2:613(a)(ii); Charles E. Friend, The Law of Evidence in Virginia § 4-5(c)(1), at 147 (6th ed. 2003).[8] Because the video was not admissible under these circumstances, trial counsel's performance was not deficient. Furthermore, because prior inconsistent statements are admissible only for purposes of impeachment and not as substantive evidence, see Neblett, Adm'r v. Hunter, 207 Va. 335, 340, 150 S.E.2d 115, 119 (1966), and because the Commonwealth's evidence otherwise was so overwhelming, Tucker can show no prejudice from Mr. Morchower's decision not to introduce the video.

Tucker, No. CL13008259-00, slip op. at 3.

The court agrees with the state court's analysis: the trial court's ruling was correct under

Virginia law because "if the witness admits making the statement, the prior inconsistent

statement may not be proved by extrinsic evidence." Currie v. Commonwealth, 515 S.E.2d 335,

342 (Va. Ct. App. 1999) (citing Brown v. Peters, 117 S.E.2d 695, 699 (Va. 1961)). Under

Strickland, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a

successful ineffective assistance of counsel claim because the result of the proceeding would not

have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889,

893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

Tucker asserts that counsel's performance was deficient because the evidence was

admissible, relying upon Zirkle v. Commonwealth, 55 S.E.2d 24 (Va. 1949) and Jones v.

Commonwealth, 650 S.E.2d 859 (Va. App. Ct. 2007). In Zirkle, the Commonwealth rebutted

---

[8] The Virginia Rules of Evidence had not yet been implemented, but the rules "d[id] not alter existing evidentiary doctrine or the viability of case law in existence prior to July 1, 2012, when they came into effect." Campos v. Commonwealth, 800 S.E.2d 174, 182 (Va. Ct. App. 2017).

"good character" evidence with evidence of a specific bad act: testimony from a judge who had convicted the defendant of a crime years before. The Virginia Supreme Court of Appeals held that rebutting good character evidence with specific acts of bad conduct was highly prejudicial and required reversal. Zirkle, 55 S.E.2d at 29-32 ("[T]he State cannot prove specific acts to show the defendant's bad character."). In Jones, the prosecutor paraphrased and cherry-picked statements that the defendant had made during a police interrogation. The defendant vehemently disagreed with the prosecutor's characterization of his statements, and he attempted to show video footage of the interview to the jury to establish context for the statements. However, the Commonwealth objected on hearsay grounds, and the trial court held the footage to be inadmissible. On appeal, the Virginia Court of Appeals held that the video was admissible because "[a]ppellant did not ask for admission of the videotape for the truth of the statements made during the interrogation. Rather, he wanted the jury to see the context in which these statements and omissions were made and determine for themselves which characterization of the inconsistencies was accurate." Jones, 650 S.E.2d at 867.

Tucker misinterprets both caselaw and the facts[9] of his own trial. First, Zirkle is irrelevant because the Commonwealth did not attempt to rebut character evidence with specific acts. Second, Jones is not applicable because (1) the Commonwealth entered the full transcript for the jury to review, and (2) Beverly was not the defendant, and neither she nor Tucker disputed the characterization or the substance of the inconsistent statements.

---

[9] In his petition, Tucker states:
The video was not "extrinsic evidence" of some other, separate inconsistent statement with which the defense wished to impeach Ms. Beverly. The video *was* the inconsistent statement, and when cross-examining Ms. Beverly, the defense had every right to confront her (and the jury) with the exact content of her prior inconsistent statement, rather than relying on a shorthand paraphrase that condensed Ms. Beverly's words into something other than what she actually said.
Pet'r's Pet. 18 (emphasis in original). He further alleges that "[i]f the state court's analysis w[as] correct, it would mean that a trial witness confronted with . . . an inconsistent police interview statement could never be confronted with the actual transcript or recording [of] the testimony or interview, on the ground that the piece of paper or digital disc . . . somehow constituted 'extrinsic evidence.'" Id.

Further, Tucker's understanding of extrinsic and intrinsic evidence is incorrect.[10] Under

Virginia law,

> [a] witness in a criminal case may be cross-examined as to previous statements
> made by him in writing or reduced into writing, relative to the subject matter of
> the proceeding . . . and if he admits its genuineness, he shall be allowed to make
> his own explanation of it.

Va. Code. § 19.2-268.1. Therefore, the written transcript of Beverly's interview could be used to

impeach Beverly. The video would be considered extrinsic evidence, however, and as soon as

Beverly admitted making the statements, the video was inadmissible to prove either that Beverly

had made the statements, or that the statements were, in fact, true. Tucker also contends that the

video demonstrated Beverly's bias. He has not alleged, with specificity, what the video would

have shown that the transcript did not; regardless, defense counsel entered the transcript, the

audio, and the video into evidence with no objection from the Commonwealth, and all were

made available to the jury.[11] Therefore, the jury was able to see and hear the full interview.

Moreover, the state habeas court concluded that "the Commonwealth's evidence

otherwise was overwhelming, Tucker can show no prejudice from [defense counsel's] decision

not to introduce the video [to the jury]." Tucker, No. CL13008259-00, slip op. at 3. The court

agrees with the circuit court's analysis. Under Strickland, "[c]ounsel is not ineffective merely

because he overlooks one strategy while vigilantly pursuing another." Williams v. Kelly, 816

F.2d 939, 950 (4th Cir. 1987) (citing Strickland, 466 U.S. at 689); Sallie v. North Carolina, 587

F.2d 636, 640 (4th Cir. 1978) (Strickland and its progeny were "not intended to promote judicial

second-guessing on questions of strategy as basic as the handling of a witness."). Counsel's

---

[10] In the impeachment context, intrinsic evidence comes from the witness during the examination;
meanwhile, extrinsic evidence is evidence admitted outside that witness's examination.

[11] After Mr. Allen's testimony, the court allowed the interview video to be entered into evidence. Trial Tr.
160.

strategy was to discredit Beverly: counsel successfully impeached Beverly's inculpatory testimony and her character for truthfulness, entered the transcript, audio, and video of her inconsistent statements into evidence, and implored jurors to examine the Allen interview materials during closing argument.[12]  Tucker cannot show that counsel's failure to use video footage of Beverly's admitted false statements would have, with a reasonable probability, changed the outcome of the trial.  Regardless, even if the video were admissible, counsel's use of a written transcript instead of video footage was not unreasonable, and should not be second-guessed on collateral review.  Tucker may disagree with counsel's choice in medium to present Beverly's false statements to the jury, but he cannot show that counsel was ineffective.

The state court's ruling was not contrary to, or an unreasonable application of, Strickland, or based on an unreasonable determination of facts.  Tucker fails to show the existence of deficient performance and prejudice; therefore, the motion to dismiss as to Claim 2 will be granted.

## C.  Claim 3

In Claim 3, Tucker argues that counsel was ineffective for failing to call his mother, Ginger Tucker, as a witness.  As part of his state habeas petition, Tucker attached a letter purportedly written by his mother in 2011.  In the missive, Ginger Tucker informs "To Whom it May Concern" of her willingness to testify that Beverly tearfully confessed a scheme to falsely implicate Tucker to both her and Lisa Guill.  Tucker asserts that because "the prosecution's case rested almost entirely on Beverly's testimony," counsel was ineffective for not calling Ms. Tucker to highlight Beverly's bias and strong motive to fabricate.  Pet'r's Resp. to the Mot. to Dismiss 8.

---

[12] "This case should be decided after you review the CD . . . It will take twenty minutes and those twenty minutes will show the deception . . . So we ask you to hearken to the transcript.  It's been introduced.  The CD is introduced."  Trial Tr. 185-90.

On <u>habeas</u> review, the circuit court held:

> For the same reason the videotape was inadmissible, Ginger Tucker's testimony about any statements Beverly made would not have been admissible as substantive evidence and only admissible as impeachment evidence if Beverly denied the statements. Moreover, because of Beverly's testimony, and because Ginger Tucker's vehicle had been used in the offense, Ginger Tucker was a very dangerous witness as there were risks that the Commonwealth could elicit information corroborating Tucker's involvement in the crime and information about the procurement of the false exculpatory videotape by Lisa Guill. The Court finds counsel's decision to present testimony from Ginger Tucker at the sentencing hearing only, rather than at the guilt phase of the trial where there was a risk of a potentially damaging cross-examination about matters related to the commission of the offense, was not unreasonable, and Tucker was not prejudiced by counsel's decision.

<u>Tucker</u>, No. CL13008259-00, slip op. at 3-4.

The court agrees with the state court's analysis. Federal courts reviewing <u>Strickland</u> claims "give counsel wide latitude in determining which witnesses to call as part of their trial strategy." <u>United States v. Dyess</u>, 730 F3d 354, 364 (4th Cir. 2013); <u>see also</u> <u>Wilson v. Greene</u>, 155 F.3d 396, 404 (4th Cir. 1998) (quoting <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of [] evidence they can choose not to introduce.'").

Counsel could have used Ginger Tucker to attack Beverly's credibility, especially if Beverly denied the alleged tearful confession. However, counsel could have recognized, as a matter of trial strategy, that Ms. Tucker was a potentially dangerous witness. Ms. Tucker's car was at the scene of the crime and Beverly's alleged confession occurred at the home and in the presence of Lisa Guill, who had pressured and harassed Beverly. Counsel could have reasonably been pursuing the strategy of minimizing potentially damaging cross-examination from Ginger

Tucker while still successfully impeaching Beverly's credibility with the Allen interview and damaging character witnesses.

Regardless, Tucker has not demonstrated prejudice. First, the Commonwealth significantly corroborated Beverly's testimony with several police officers, and the surveillance materials confirmed Beverly's version of events. Second, Tucker has not proffered an affidavit of Ginger Tucker's testimony. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

The state court's ruling was not contrary to, or an unreasonable interpretation of, federal law, or based on an unreasonable determination of facts. Tucker has not shown that counsel's failure to call Ginger Tucker as a witness was deficient performance, or that if counsel had called Ms. Tucker, there was a reasonable probability that the outcome of the trial would have been different; therefore, the court grants the motion to dismiss as to Claim 3.

### D. Claim 4

In Claim 4, Tucker alleges that counsel was ineffective for failing to call Lisa Guill as a defense witness. Tucker proffers an affidavit from Ms. Guill describing her putative testimony: that she was present at Applebee's with Tucker on September 30, 2011, and that she did not see Tucker either possess or distribute cocaine. Tucker argues that "Beverly had already accused Guill of impropriety during the Commonwealth's case in chief, there was no permissible rationale under Strickland for trial counsel to leave Beverly's testimony unrebutted by declining

to utilize . . . the exculpatory testimony proffered by Lisa Guill." Pet'r's Resp. to the Mot. to Dismiss 10 (emphasis in original).

On habeas review, the Lynchburg City Circuit Court held:

> Counsel's affidavit reflects that Mr. Morchower decided not to call Guill because she was in an intimate relationship with Tucker, was incarcerated on pending drug charges, and her credibility was damaged by the revelation during the trial that she was involved in the procurement of the false video testimony. Mr. Morchower states, "Ms. Guill was intimately involved with Mr. Tucker and she was incarcerated at the time of the trial on pending drug charges. Ms. Guill's credibility became an issue after Ms. Beverly testified in reference to the false video deposition." (Respondent's Exhibit 1). Beverly's testimony left no doubt that Lisa Guill intimidated her into providing a false video deposition. Guill also communicated with Beverly to set up the meeting at which Tucker sold Beverly the cocaine, thus was involved in the crime. Guill could have been cross-examined about her role in [Tucker's] drug-dealing enterprise and could have been cross examined extensively not only about her personal actions in coercing the false statement from Jennifer Beverly but about whether Tucker colluded with her to procure that false statement. The court finds the decision not to call Lisa Guill was not deficient performance, and [Tucker] fails to demonstrate prejudice from the decision not to call Guill and risk a very damaging cross-examination.

Tucker, No. CL13008259-00, slip op. at 4. The court agrees with the state court's analysis.

First, Tucker cannot show that counsel's performance was deficient. Counsel could reasonably have been pursuing a strategy that minimized detrimental cross-examination while still effectively impeaching Beverly. Counsel could have recognized that Lisa Guill would be subject to potentially severely damaging cross-examination. She was Tucker's girlfriend, had facilitated and was present for the controlled buy, had coerced Beverly to speak with Tucker's first attorney in an attempt to defraud the court, was under indictment, and had harassed Beverly on Facebook leading up to the trial. Second, Tucker cannot show prejudice from counsel's decision because although Lisa Guill's testimony would have further impeached Beverly, calling her as a witness also presented a serious risk of problematic cross-examination. Regardless, the

Commonwealth's evidence not only corroborated Beverly's testimony, but was "overwhelming" in establishing Tucker's guilt.

The court concludes that the state court's decision was not contrary to, or an unreasonable interpretation of, Strickland, or an unreasonable determination of facts; therefore, the court grants the motion to dismiss as to Claim 4.

### E. Claim 5

In Claim 5, Tucker avers that counsel was ineffective in the plea bargain process. Specifically, counsel's "refusal at trial to introduce the [Allen] video, and his corresponding refusal to call Ginger Tucker and Lisa Guill as defense witnesses, completely undermined the pretrial rationale that had been presented to Mr. Tucker for turning down the Commonwealth's offer." Pet'r's Pet. 26. Tucker further alleges that counsel had a "clear obligation" to tell Tucker if counsel felt that "an uncorroborated suggestion from Beverly of influence having been exerted on her by a potential defense witness would somehow preclude the defense from calling that witness," so that Tucker could make an informed decision on whether to accept the plea bargain. Pet'r's Pet. 29.

> On habeas review, the Lynchburg City Circuit Court held the following:
>
> The Court rejects Tucker's contention that he is entitled to have the Commonwealth's plea offer reinstated. The Court has rejected the individual claims of ineffective assistance of counsel. Tucker does not allege that Mr. Morchower failed to apprise him of the plea offer, see Missouri v. Frye, 132 S. Ct. 1409 (2012), or that Mr. Morchower erroneously advised him about a legal rule applicable to his case, thus affecting the plea decision. See Laf[l]ler v. Cooper, 132 S. Ct. 13[76] (2012). The court accepts Mr. Morchower's testimony that he "did not make any guarantees or promises to Mr. Tucker regarding the outcome of his trial." (Respondent's Exhibit 1). A decision by counsel about the use of witnesses during a trial does not provide grounds for a defendant to revive a plea offer he has rejected, and Mr. Morchower's tactical decision not to present certain

evidence in light of revelation of a scheme to present false testimony to the Court provides no basis for a finding of deficient performance. See Nix v. Whiteside, 475 U.S. 157 (1986).

Tucker v. Dillman, No. CL13008259-00, slip op. at 5.

The court agrees with the state court's decision. The AEDPA and Strickland's progeny do not support the proposition that federal habeas courts may reinstate a plea bargain under Tucker's circumstances. Tucker does not claim that counsel: failed to apprise Tucker of the existence of the plea deal, informed Tucker of an incorrect legal rule that precluded Tucker from accepting the plea bargain, or failed to pursue plea negotiations at all in a case of clear guilt.[13] Counsel may have changed his mind about calling Ginger and Lisa Guill as witnesses, but counsel never misled Tucker by altering his overall strategy of impeaching Beverly's credibility.

The circuit court's ruling was not contrary to, or an unreasonable interpretation of, Strickland, or based on an unreasonable determination of facts. Tucker has not shown that counsel's performance during the plea bargain process was deficient, and he fails to show that, but for counsel's alleged error, he would have pled guilty; therefore, the court grants the motion to dismiss as to Claim 5.

---

[13] Tucker cites several cases, including Frye, Lafler, United States v. Brannon, 48 Fed. App'x 51 (4th Cir. 2002), and Ford v. Peyton, 163 S.E.2d 314 (1968), but none support Tucker's argument. See Frye, 566 U.S. 133, 138-40 (2012) (Counsel was ineffective for not informing defendant of the existence of plea bargains.); Lafler, 566 U.S. 156, 162 (2012) (Counsel was ineffective for informing defendant of incorrect legal rule that led the defendant to "los[e] out on an opportunity to plead guilty and receive the lower sentence that was offered to him."); Brannon, 48 Fed. App'x at 53 (A defendant can make a colorable claim of ineffective assistance when counsel: (1) fails to communicate the plea offer, (2) gives erroneous advice during plea negotiations, or (3) fails to pursue plea negotiations in a case where guilt is clear.); Ford, 163 S.E.2d at 315-16 (Counsel was ineffective when he did not request a continuance after being "appointed within a matter of minutes before [defendant] was tried.").

## VII.

For the reasons stated, the court will grant the motion to dismiss. Claim 1 is procedurally barred without excuse; regardless, all claims are without merit. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Tucker and to counsel of record for Respondent.

ENTER: This 16th day of August, 2017.

_____
United States District Judge